UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DENISE A. WILLIAMSON,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security Administration,

        Defendant.

Case No. 4:13-CV-1 JVB

**OPINION AND ORDER**

Plaintiff Denise Williamson seeks judicial review of the final decision of Defendant Carolyn W. Colvin,[1] Acting Commissioner of Social Security, who denied her application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 416(i), 423 *et seq*. For the following reasons, the Court affirms the Commissioner's decision.

**A. Procedural Background**

On June 5, 2010, Plaintiff applied for disability benefits due to a disabling condition that allegedly began on September 8, 2009. (R. 141.) Plaintiff's claim was denied initially and upon reconsideration. (R. 57–59, 65–68.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and appeared with counsel on August 9, 2011. (R. 82.)

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue as the named Defendant.

On September 2, 2011, the ALJ determined Plaintiff was not entitled to Social Security disability benefits. (R. 8.) The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
2. The claimant has not engaged in substantial gainful activity since September 8, 2009, the alleged onset date.
3. The claimant has the following severe impairments: status post left knee surgery, osteoporosis, L5–S1 herniation without nerve root impingement, and bilateral lumbar radiculopathy.
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 10 pounds occasionally, stand/walk 2 hours each in an 8-hour workday, and sit 6 hours in an 8-hour workday with normal breaks. She can never climb ladders, ropes, scaffolds, or stairs, but can occasionally climb ramps, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold or heat, wetness and humidity, and hazards such as moving machinery or unprotected heights.
6. The claimant is capable of performing past relevant work as a collections clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
7. The claimant has not been under a disability, as defined in the Social Security Act, from September 8, 2009, through the date of this decision.

(R. 11–19.)

The ALJ's opinion became final when the Appeals Council denied Plaintiff's request for review on November 1, 2012. (R. 1.)

**B. Factual Record**

**(1)** *Plaintiff's Background*

Plaintiff was forty-six years old when she filed her initial application for disability benefits. (R. 141.) She graduated from high school and is able to communicate, read, and write in English. (R. 144, 146.) Plaintiff has an extensive work history, which includes working as an

assistant manager/cook, an outsourcing clerk, a payroll clerk, and a purchasing and warehouse manager. (R. 146.)

Plaintiff currently lives with her husband and has two adult children who no longer live at home. (R. 32–33.) Plaintiff testified that she is unable to drive when taking her prescribed medication due to drowsiness. (R. 34–35.) Plaintiff further testified that she has difficulty performing personal hygiene, bathing, and dressing due to her numerous medical conditions. (R. 39–40.) Plaintiff also testified that she receives assistance from neighbors with shopping and does not attend any social gatherings. (R. 42.)

**(2)** *Medical Evidence*

Plaintiff has a wide-ranging history of medical ailments that began before the alleged disability onset date. First, during a bone density test in January 1997, Plaintiff was diagnosed with osteopenia in her lumbar spine. (R. 196–197.) Then, in August 2009, Plaintiff underwent another bone density scan that revealed severe osteoporosis in the AP L1–L4 region of her spine. (R. 231.) Finally, in 2009, Plaintiff was treated for a lateral meniscus tear in her left knee, pain and bulging in her lumbar spine that required epidural steroid injections, and a right shoulder injury (R. 250, 310–312, 450–452.)

After the alleged disability onset date, Plaintiff was examined by a physician at the request of the Indiana Disability Determination Service. (R. 339.) During this examination, Dr. Shoucair made three significant findings regarding Plaintiff's physical condition. First, Dr. Shoucair noted that Ms. Williamson was able to "heel walk, toe walk, and ambulate without difficulty." (R. 341.) Next, Dr. Shoucair noted that Plaintiff had "[g]ood muscle strength . . . in the bilateral upper and lower extremities . . . [g]ood full range of motion in the cervical and

thoracic spine," but did have a "[d]ecreased range of motion with forward flexion of the lumbar spine." (*Id.*) Finally, Dr. Shoucair concluded that "[d]espite impairments with respect to work-related activities the claimant has the ability to sit, stand, handle objects, hear, see, and speak." (R. 342.)

**(3)** *Plaintiff's Testimony*

At the hearing, Plaintiff testified that she suffered from numerous physical ailments that affected her upper body, lower body, and daily activities. First, Plaintiff asserted that she had significant right shoulder pain that inhibited her ability to lift and reach objects. (R. 31.) Plaintiff also stated she has sharp pain that radiates from her neck down her back as a result of "degenerative disc disease." (*Id.*) As a result of this constant pain Plaintiff asserted that she could only stand five to ten minutes at a time. (R. 33.) Finally, Plaintiff testified about the knee surgery to repair her meniscus, osteoporosis, and osteopenia. (R. 31–32.) Plaintiff said that her knee injury limited her to walking only between a hallway and a bathroom and that she was unable to walk the equivalent of one city block. (R. 33–34.)

Plaintiff then testified about the impacts her impairments have on her daily activities. Plaintiff testified that she only sleeps for about four hours a night due to knee and back pain. (R. 38.) Next, Plaintiff asserted that she is unable to shower without her husband who helps her wash her hair and prevents her from falling. (R. 39.) Plaintiff also told the ALJ that she is unable to dress herself, do simple household chores, or perform any yard work. (R. 40–41.)

**(4)** *Vocational Expert's Testimony*

Vocational Expert ("VE"), Dr. James Lozer, testified at Plaintiff's hearing before the ALJ. (R. 46.) The ALJ described Plaintiff's limitations as lifting ten pounds occasionally,

4

standing or walking two hours of an eight hour work day, sitting for six hours of an eight hour work day with breaks, never climbing ladders, ropes or scaffolds, and climbing ramps and stairs occasionally. (R. 48.) The VE testified that Plaintiff could perform her past work as a collections clerk despite her physical limitations. (R. 49.) The ALJ then asked whether there were any jobs in the local or regional economy that Plaintiff could perform. (R. 49–50.) The VE responded that someone with Plaintiff's experience and residual functional capacity for work could serve as a collections clerk, an assembler, or an office clerk. (*Id.*) In Plaintiff's region there are approximately 6,000 jobs that fall into the category of sedentary, unskilled work that Plaintiff's residual functional capacity would allow her to perform. (*Id.*)

Two more significant hypothetical questions were posed to the VE following the ALJ's initial round of questioning. First, the ALJ posed a hypothetical that assumed all of the same conditions as above, but added the issue of persistent work absences. (R. 50.) The VE replied that Plaintiff would not be able to sustain competitive employment if she missed more than 2.5 days of work a month. (*Id.*) Next, the VE testified that if Plaintiff could not complete the "lifting, standing, walking, or sitting requirements of even sedentary work" for a normal work schedule she could not sustain competitive employment. (R. 50.) The VE concluded his testimony by affirming that the sedentary, unskilled jobs he listed require an individual to "understand, remember and carry out simple instruction, make simple judgments . . . [and] interact appropriately with supervisors and coworkers in routine work settings." (R. 53.)

 **(5)** *ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 19.) The ALJ classified Plaintiff's post left knee surgery, osteoporosis, L5–S1 herniation without

nerve root impingement, and bilateral radiculopathy as severe impairments. (R. 13.) However, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.)

The ALJ found that Plaintiff possessed a residual functional capacity to perform sedentary work as defined by 20 C.F.R. § 404.1567(b). (R. 17.) The ALJ assigned Plaintiff this residual functional capacity even though State agency medical consultants opined that Plaintiff could perform a limited range of light work, which is less restrictive than the ALJ's finding. (R. 17.) The ALJ noted that Plaintiff was entitled to "the benefit of the doubt" and that the medical evidence coupled with Plaintiff's testimony supported "a more restrictive exertional level," thus a sedentary RFC finding (*Id.*)

The ALJ addressed all of Plaintiff's self-confessed limitations and found her testimony to be inconsistent with the objective medical evidence. (R. 14–17.) The ALJ observed Plaintiff's use of largely conservative treatment options, the lack of complaints regarding specific ailments for long intervals, the lack of any treatment for significant periods of time, and the lack of any opinion of disability from the Plaintiff's treating physicians. (R. 15–17.) The ALJ then concluded that the evidence on the record did not "support her allegations of symptoms, functional limitations, and significantly reduced activities of daily living," thus undermining her credibility. (R. 17.)

Two weeks after the ALJ's decision, Plaintiff obtained new medical treatment and evidence which she presented to the Appeals Council. This medical evidence consisted of an MRI of the lumbar spine and treatment records from a nurse practitioner. Plaintiff asserts that this medical evidence is new, material, and that she has good cause for not presenting the

evidence earlier. (DE 17, Pl.'s Br. at 19–20.) The Appeals Council reviewed this new evidence and denied Plaintiff's request for review. (R. 1–4.)

Plaintiff asserts two claims she believes necessitate remand or reversal. First, Plaintiff maintains that the ALJ failed to properly develop the evidence and that his decision is not based upon substantial evidence as required by 42 U.S.C. §405(g). (DE 17, Pl.'s Br. at 1.)

Next, Plaintiff requests remand on the basis of new medical evidence presented to the Social Security Administration's Appeals Council. She obtained this medical evidence two weeks after the ALJ issued a decision. The evidence consisted of an MRI of the lumbar spine and treatment records from a nurse practitioner. Plaintiff asserts that this medical evidence is new, material, and that she had good cause for not presenting the evidence earlier, which allows this Court to remand pursuant to 42 U.S.C. §405(g).[2] (DE 17, Pl.'s Br. at 19–20.)

**C. Disability Standard**

To qualify for Disability Insurance Benefits or Supplemental Security Income claimants must establish that they suffer from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A.) The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

---

[2] "The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision." 42 U.S.C. §405(g) (2012).

7

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004.)

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001.) A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. (*Id.*) The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000.)

**D. Standard of Review for the ALJ's Decision**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g.) The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005.) Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971.) This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005.) This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002.)

**E. Standard of Review for New Evidence**

To necessitate remand, new medical evidence must be new, material, and there must be good cause "for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (2012). New evidence is material if it was "not in existence or available to the claimant at the time of the administrative proceeding." *See Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

In addition, there must be "a reasonable probability that the Commissioner would have reached a different conclusion had the [new] evidence been considered." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (affirming the district court's decision not to remand was proper because claimant's new evidence was an opinion based on facts already on the record). To triumph on the good cause prong a Plaintiff must demonstrate that they could not have presented the evidence earlier in the proceedings. *See Campbell v. Shalala*, 988 F.2d 741, 745 n.2 (7th Cir. 1993) (finding that Plaintiff failed to show good cause because they could have and should have obtained evaluations while his case was still subject to administrative review).

**F. Analysis**

Plaintiff's brief presents two separate reasons for this Court to reverse or remand the ALJ's decision. Both of Plaintiff's arguments fail and will be evaluated in turn.

**(1)** *Substantial evidence supports the ALJ's credibility determination*

An ALJ's credibility finding is entitled to "considerable deference" and will only be overturned if patently wrong. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). "This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does." *Sims v. Barnhart*, 442 F.3d 536, 537–38 (7th Cir. 2006).

The ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations and must justify the credibility finding with specific reasons supported by the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); 20 C.F.R. § 404.1529(c) (2010); *see also* SSR 96-7p, 1996 SSR LEXIS 4. An ALJ may find that an individual's statements are "credible to a certain degree." SSR 96-7p, 1996 SSR LEXIS 4.

Here the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 15.) However, the ALJ found that the "claimants statements regarding the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" Plaintiff's assessed residual functional capacity. (*Id.*) Plaintiff alleges the ALJ erred in his overall credibility finding by assuming that Plaintiff should not have foregone treatment for eight months, which was necessitated, at least in part, by her lack of health insurance. (DE 16, Pl.'s Br. at 22–23.)

The ALJ's credibility determinations were not patently wrong. The ALJ explained the credibility decision in a rational and logical manner and it was supported by substantial evidence in the record. The ALJ's findings took into account Plaintiff's testimony and the medical evidence regarding Plaintiff's ability to perform a sedentary level of work. The ALJ's statement regarding gaps in treatment and conservative treatment was placed in the larger context of overall credibility and was one of many examples where Plaintiff's subjective complaints were inconsistent with her pursued course of treatment. (R. 15–16.) For example, immediately after the statement regarding Plaintiff's credibility, the ALJ noted that, despite reports of disabling knee pain, Plaintiff failed to seek additional treatment when her health insurance resumed. (R. 15.) This portion of the ALJ's credibility analysis also corresponds to reports from Plaintiff's examining physicians that noted her "good tandem gait . . . [and her ability to] ambulate without

difficulty." (R. 17.) Accordingly, the ALJ's opinion was properly developed and he relied upon substantial evidence. Moreover, the ALJ considered relevant evidence and discounted overly optimistic findings of State agency medical consultants when he reasonably concluded that Plaintiff could perform sedentary work. Therefore, it was rational for the ALJ to find that Plaintiff's impairments were severe, but not to the extent that Plaintiff could not perform sedentary work. Accordingly, the Court must affirm the ALJ's decision regarding Plaintiff's ability to perform work at a sedentary level.

**(2)** *Plaintiff's new evidence would not change the ALJ's decision*

Plaintiff asserts that the Appeals Council erred in finding that her new evidence did not require remand. (DE 16, Pl.'s Br. at 19–20.) Specifically, she argues that a new MRI and an opinion from a one-time visit with a nurse practitioner support remand for further proceedings. (*Id*. at 20–21.) Plaintiff's argument fails for two reasons. First, Plaintiff's argument that she had good cause for not presenting this evidence earlier is unconvincing due to her treatment in the year preceding the hearing with the ALJ and the medical evidence in the record. Second, it would be unreasonable for this Court to find that this new evidence is material pursuant to 42 U.S.C. §405(g).

Plaintiff does not show good cause why this evidence was not obtained before the ALJ's hearing. In Plaintiff's brief she explains the meaning of good cause, but does not assert how she satisfies the requirement. Moreover, Plaintiff expressly articulates how the evidence is new and material, but fails to advance any reason why she did not seek this treatment or opinion before her hearing. This failure is particularly fatal because claimants have the burden of showing "good cause." *Collins v. Astrue*, 2010 U.S. Dist. LEXIS 111345, at *35 (N.D. Ind. Oct. 19,

2010). Plaintiff received medical treatment through 2010 and 2011, but did not obtain this evidence. Since Plaintiff has not shown any "impediment to obtaining the evidence," good cause has not been demonstrated. *Anderson v. Bowen*, 868 F.2d 921, 928 (7th Cir. 1989) ("Where, as here, the reasons for pursuing additional evidence are apparent while the case is still subject to administrative review, and there is no impediment to obtaining the evidence, no good cause has been demonstrated for failing to bring the evidence to the Secretary's attention."). Accordingly, Plaintiff has failed to satisfy the conditions required to remand this case.

Even if the Plaintiff could satisfy the good cause requirement, she fails to demonstrate how this new evidence would lead to a different decision by the Commissioner of Social Security or the ALJ. The evidence from the MRI is largely consistent with Plaintiff's back ailments that was already in the record. The ALJ repeatedly stated that Plaintiff received "the benefit of the doubt," even to the point that the ALJ downgraded the recommended RFC from the State agency medical consultant. The ALJ's analysis would not change on the basis of this MRI, since the ALJ had already accounted for Plaintiff's subjective assessment of pain. (R. 17.) Similarly, the treatment notes from a nurse practitioner would not alter the ALJ's assessment of Plaintiff's treating and examining physicians, which were consistent. Furthermore, an ALJ can "assume that a claimant represented by counsel has presented her strongest case for benefits" at the hearing. *See Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). With this assumption in mind, it is clear that a new MRI, obtained two weeks after the ALJ's decision, and a nurse practitioners one-time assessment would not materially impact the proceedings. Accordingly, the Plaintiff has failed to satisfy the materiality prong.

**F. Conclusion**

The ALJ decided Plaintiff's claim using the correct legal standard and the decision was supported by substantial evidence. Also, the Plaintiff did not provide new evidence that necessitates remand under 42 U.S.C. §405(g). Therefore, the ALJ's decision is affirmed.

SO ORDERED ON March 26, 2014.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE